**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY JORDAN, | ) | |
| KENNETH GREENLAW, | ) | |
| THEODIS CHAPMAN, and | ) | |
| PATRICK NELSON, on behalf of themselves | ) | |
| and others similarly situated, | ) | No. 15-cv-5907 |
| | ) | |
| Plaintiffs, | ) | Judge Sara L. Ellis |
| | ) | |
| vs. | ) | JURY DEMANDED |
| | ) | |
| TIMOTHY EVANS, CHIEF JUDGE OF THE | ) | |
| CIRCUIT COURT OF COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**SECOND AMENDED COMPLAINT**

1.     Plaintiffs, Anthony Jordan, Kenneth Greenlaw, Theodis Chapman, Patrick Nelson, on behalf of themselves and other African-Americans similarly situated and employed or formerly employed as Cook County Juvenile Probation Officers by the Hon. Timothy Evans, Chief Judge of the Circuit Court of Cook County, Illinois ("Chief Judge"), contend that defendant Chief Judge who oversees the Cook County Juvenile Probation and Court Services Department ("Cook County Juvenile Probation Department") has discriminated against them or tolerated discrimination of them on the basis of their race through his subordinates as follows:

A. Imposing greater or harsher discipline on plaintiffs and other African American officers than on by non-African-American probation officers for purported offenses of the same character and degree;

B. Using different and harsher terminology to describe the misconduct allegedly committed by African-American probation officers than for misconduct of the same kind or character  allegedly committed by non African-American probation officers;

1

C. Issuing more written and verbal reprimands and suspensions to African-American probation officers compared to non-African American probation officers;

D. Imposing arbitrarily the use of a "Last Chance Agreement" system to discipline and terminate the employment of African-American probation officers, in violation of their union employment contract;

E. Seeking to frustrate and deprive the plaintiffs or their union representatives from lawfully gaining access to historical and current records which would support not only the claims of racially-based disparate treatment and of policies that disparately impact them, but also the existence of a pattern and practice of carrying out this racially-based disparate treatment; and

F. Trying recently to cover-up past racially-based disparate treatment by scapegoating white probation officers through claims of misconduct and discipline.

.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to the  Title VII of the Civil Rights Act of 1964, as amended, 730 ILCS 110/13 of the Illinois Probation and Parole Officers Act, and Section 5(b) of the Illinois Civil Rights Act, 740 ILCS 23/5(b).

3.     This Court has jurisdiction over the federal claims pursuant to 42 U.S.C. sec. 2000e-5(f). This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. sec. 1367.

4.     Venue is proper in this District pursuant to 28 U.S.C. 1391 because the events giving rise to this claim occurred in this District.

5.     The plaintiffs have met the administrative prerequisites prior to instituting these legal proceedings. The named plaintiffs filed their charge of race discrimination before the U.S.

2

Equal Employment Opportunity Commission ("EEOC"). The EEOC issued right to sue letters dated April 2, 2015 to plaintiffs Kenneth Greenlaw, Patrick Nelson, and Theodis Chapman. Plaintiffs Greenlaw, Nelson, and Chapman received in the mail the right to sue letters on April 7, 2015. On April 10, 2015 plaintiff Anthony Jordan received in the mail the right to sue letter that was dated April 7, 2015.

## THE PARTIES

6.      Plaintiffs Anthony Jordan, Kenneth Greenlaw, Theodis Chapman, and Patrick Nelson are African-American citizens of the United States and residents of Cook County, State of Illinois. At all relevant times Plaintiffs Chapman and Nelson are employed as Cook County Juvenile Probation Officers and plaintiffs Jordan and Greenlaw were formerly employed in that capacity.

7.      Defendant, Hon. Timothy Evans, is Chief Judge of the Circuit Court of Cook County, Illinois.  In that capacity he is an "employer" for purposes of Title VII of the Civil Rights Act and is a "unit" of State government for purpose of Section 5 of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

8.      Separate from his judicial duties, defendant Chief Judge is as a matter of law administratively responsible for supervising the Cook County Juvenile Probation Department pursuant to the Illinois Probation and Parole Officers Act, 730 ILCS 110, *et seq.* ("Probation Act"), and the Illinois Juvenile Court Act, 705 ILCS 405/1-1 *et seq.* ("Juvenile Court Act").

9.       Although the Chief Judge has authority to delegate to the Director of Court Services matters relating to the employment of juvenile probation officers like the plaintiffs including discipline, the Chief Judge has general authority and supervisory responsibility over the actions of the subordinate director and other managerial employees of the Cook County Juvenile Probation Department.

3

10.     As set forth below, the delegation of this responsibility to the Cook County Juvenile Probation Department – while permissible under the Probation Act – in this case constitutes an abuse of the discretion of the Chief Judge when it results in a pattern and practice of race discrimination in disregard of Title VII and other law.

## FACTS

11.     Effective December 1, 2008, and continuing in effect, a Collective Bargaining Agreement ("CBA") was entered into between defendant Chief Judge Timothy Evans and the American Federation of State, County, and Municipal Employees ("AFSCME") Council 31 ("The Union").

12.     The CBA was entered into by defendant Chief Judge Timothy Evans, and not the "Office of the Chief Judge."

13.     The CBA was signed by defendant Chief Judge Evans, with no language stating or implying that his signature was on behalf of the "Office of the Chief Judge".

14.      There exists no "Office of the Chief Judge" as a legal entity described within the Probation Act or the Juvenile Court Act., In a case heard by district Judge Blanche Manning, *Ibarra v. Chief Judge*, No. 04-cv-8076,  the Court, in a memorandum opinion dated March 19, 2007, held that:

>        The Chief Judge is the person who ultimately imposes discipline
>        after a recommendation from the chief probation officer.

15.     The CBA representing the juvenile probation officers contained in pertinent part the following terms:

>        Article I, Section 2. Employer Obligation:
>
>        The union recognizes that this Agreement does not empower the
>        Employer to do anything that is prohibited from doing by law.
>
>        * * *

4

Article XX, Section 9. No Discrimination:

No employee shall be discriminated against on the basis of race, color, sex, age, religion, disability, national origin, ancestry….

* * *

Article III, Section I. Employer Rights:

The union recognizes that the Employer has the full authority and responsibility for directing its operations and determining policy….

**The Historical Pattern, Policy, and Practice
of The Defendant Employer In His Delivery
of Discipline to The Juvenile Probation Officers.**

Argentry Mitchell

16.     In 2009 Argentry Mitchell, an African-American supervisory juvenile probation officer, made a claim of Title VII race discrimination against the defendant Chief Judge in *Mitchell v. Rohan, et al.*, No. 09-cv-5874, (N.D. Ill). Although Mitchell performed his job in a manner which exceeded expectations, he received a 10-day suspension without pay based on a claim that that Mitchell's supervision of a subordinate was faulty.

17.     Yet a non African-American supervisory probation officer who was also accused of such faulty supervision received only a reprimand.

18.     Defendant Chief Judge was aware of Mitchell's claims, yet took no action to investigate the veracity, abandoned his duty under Illinois law to exercise general supervision over the Department; and permitted managers without his legal background to decide the veracity of evidence, the characterization of the alleged misconduct, and the degree of discipline.

19.     Because of errors made by Mitchell's counsel in the timing of service of the defendants, the district court dismissed the complaint in November, 2010, without ever reaching the merits of Mitchell's claim.

5

Michael Willis

20.     Michael Willis was a former juvenile supervising probation officer who also served as the president of the union's Local 3477, representing Cook County Juvenile Probation Officers, until he retired in December, 2014. During his presidency Mr. Willis, an African-American, was involved in the union's representation of probation officers who faced allegations of misconduct and risks of discipline. Although Mr. Willis did not use the disciplinary records to compile empirical data so as to analyze statistically the persuasiveness of claims by African-American juvenile probation officers that the degree of their discipline and the characterization of their discipline was disparate from the punishment and characterization meted out to non African-American juvenile probation officers, he was of the opinion that discipline for African-American officers was more severe than for non-black officers whose allegations of misconduct were similarly situated.

Jason Smith

21.     Jason Smith is an African-American juvenile probation officer who succeeded Michael Willis as president of union Local 3477. Mr. Smith was previously the vice-president of the local during the tenure of Michael Willis.

22.     Jason Smith recognized that claims of racial discrimination to the EEOC, the Illinois Department of Human Rights ("IDHR"), the federal courts, and arbitration were failing due to the failure to allege and document a pattern and practice of racially disparate treatment.

**The Collection of Discipline Records.**

23.     Accordingly, in 2012, Jason Smith made his first request for juvenile probation officer discipline records for the preceding five years.

24.     . On several occasions the defendant employer refused to turn over the records, citing pre-textual excuses, such as the information was "irrelevant," or could not be found.

25.     Finally, Jason Smith filed an unfair labor charge against the defendant Chief Judge, which resulted in a decision compelling the defendant Chief Judge to turn over the records.

26.     In an effort to substantiate the racially-disparate treatment of African-American probation officers, Local 3477 began to compile data reflecting categories of terminations, suspensions, and written or verbal reprimands among the population of approximately 400 juvenile probation officers for the years 2008 thru 2013. For each of these years the categorical data focused on four groups: African-American, Caucasian, Latino, and Other.

27.     For the year 2008 there were a total of 12 terminations and/or suspensions. Of the 12:

|   |   |
|---|---|
| 10 were African-American | (83%) |
| 1 was Caucasian | (8.5%) |
| 1 was Latino | (8.5%) |
| 0 was Other | (0%) |

For the year 2008 there was a total of one written or verbal reprimand. The one was Latino.

28.     For the year 2009 there was a total of 8 terminations/and or suspensions. Of the 8:

|   |   |
|---|---|
| 7 were African-American | (87%) |
| 0 was Caucasian | (0%) |
| 1 was Latino | (13%) |
| 0 was Other | (0%) |

For the year 2009 there was a total of 5 written and/or verbal reprimands. Of the 5:

|   |   |
|---|---|
| 3 were African-American | (60%) |
| 1 was Caucasian | (20%) |

| | |
|---|---|
| 1 was Latino | (20%) |
| 0 was Other | (0%) |

29.　　For the year 2010 there was a total of 17 terminations and/or suspensions. Of the 17:

| | |
|---|---|
| 12 were African-American | (71%) |
| 5 were Caucasian | (29%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

For the year 2010 there was a total of 16 written and/or verbal reprimands. Of the 16:

| | |
|---|---|
| 2 were African-American | (12%) |
| 10 were Caucasian | (63%) |
| 4 were Latino | (25%) |
| 0 was Other | (0%) |

30.　　For the year 2011 there was a total of 18 terminations and/or suspensions. Of the 18:

| | |
|---|---|
| 14 were African-American | (78%) |
| 1 was Caucasian | (5%) |
| 3 were Latino | (17%) |
| 0 was Other | (0%) |

For the year 2011 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 2 were African-American | (100%) |
| 0 was Caucasian | (0%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

31.　　For the year 2012 there was a total of 6 terminations and/or suspensions. Of the 6:

8

| | |
|---|---|
| 5 were African-American | (83%) |
| 1 was Caucasian | (17%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

For the year 2012 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 2 were African-American | (100%) |
| 0 was Caucasian | (0%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

32.    For the year 2013 there was a total of 10 terminations and/or suspensions. Of the 10:

| | |
|---|---|
| 5 were African-American | (50%) |
| 3 were Caucasian | (30%) |
| 2 were Latino | (20%) |
| 0 was Other | (0%) |

For the year 2013 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 0 was African-American | (0%) |
| 2 were Caucasian | (100%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

33.    The total number of suspensions and/or terminations for the years 2008 through 2013 was 71:

| | |
|---|---|
| 53 were African-American | (75%) |
| 11 were Caucasian | (15%) |
| 7 were Latino | (10%) |

0 was Other                        (0%)

The total number of written and/or verbal reprimands for the years 2008 through 2013 was 28:

9 were African-American      (32%)

13 were Caucasian           (47%)

6 were Latino                (21%)

0 was Other                   (0%)

34. Union Local 3477 also performed an analysis of the labeling utilized by the defendants to describe the misconduct allegedly committed by juvenile probation officers during the period 2008 through 2013.

35. The analysis revealed that the defendant employer would use in its records a descriptive label to describe the character of misconduct for a non African-American probation officer that was less aggravating, but would use a different, more aggravating label for an African-American probation officer who was accused of committing a similar type of misconduct.

36. In this respect, the plaintiffs' analysis drew attention to the facts that the defendant employer gave disparate discipline to African-American probation officers, in contrast to the discipline meted out to non African-American probation officers who engaged in similar, or even more egregious misconduct.

37. Instead personally taking corrective action to cure the disparate treatment complained of by Local 3477, the Chief Judge failed and continues to fail to exercise any meaningful oversight of the Cook County Juvenile Probation Department and has abdicated his responsibility to ensure compliance with federal and state laws on race discrimination.

10

38.     Recently the defendant Chief Judge has permitted or acquiesced to actions of the Cook County Department of Juvenile Probation in making bad faith claims of misconduct by white or non-African-American probation officers so as to portray past and current disciplinary acts as evenhanded for all probation officers, regardless of race.

39.     Recently, during a grievance hearing held on behalf of probation officer Edward Walsh, a white officer, one of defendant's managers, William Patterson, stated that if defendant did not discipline Walsh the union would say that defendant was being racially discriminatory.

32.  Previously, actions by white officers did not receive the same discipline or scrutiny as actions by their African-American peers.  For example, four white female probation officers, three of whom are presently employed by the defendant, were cited for being romantically and sexually involved with clients – yet none were terminated or prosecuted.  In another case, a white probation officer was using county funds to purchase purses, but she was not terminated.

40.     In 2014, with the aid of the compelled records, Jason Smith sent a letter to the Civil Rights Division, Employment Litigation Section, Department of Justice, requesting the initiation of an investigation into racial discrimination within the Cook County Juvenile Probation Department. A copy of the letter was sent to defendant Chief Judge.

41.     The Union has also directly notified defendant Chief Judge  of several examples of the disparate treatment of African-American juvenile probation officers by his subordinates in the Cook County Juvenile Probation Department

42.     The defendant Chief Judge unlawfully failed and continues to fail to investigate or take responsibility for the management of the Cook County Juvenile Probation Department and neglects his statutory obligation to exercise general supervision over the Cook County Juvenile Probation Department as set forth 730 ILCS 110/13, which is part of the Illinois Probation Act.

43. That section of the Illinois Probation Act states in part that the director of the court services officer or chief probation officer shall at all time be "subject to the general administrative and supervisory authority of the Chief Circuit Judge...[.]"

44. Furthermore, that section of the Illinois Probation Act states: "Any disciplinary action taken by the director or chief probation officer shall be in accordance with any State or federal laws that may be applicable…[.]"

45. Accordingly, as set forth here and in Count II below, the defendant Chief Judge has failed his statutory responsibility under the Illinois Probation Act to ensure that his subordinates are in compliance with such laws, including Title VII of the Civil Rights Act and the Illinois Civil Rights Act of 2003.

46. These acts have resulted in disparate treatment of juvenile probation officers on the basis of their race, including:

a. Emily Pierce.

Emily Pierce is an African-American juvenile probation officer who, in an audit concerning performance, was admonished and cited as deserving of discipline. However, two white probation officers, Dennis Brady and Katie McGoldrick, received more negative performance reviews in the audit, but were never recommended for discipline. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

b. Christen Loeb.

Christen Loeb is a white juvenile probation officer who admitted that she made mistakes which led to another probation officer not being able to complete a social investigation, which led to a minor remaining in custody. Although such errors would have led to a notice of discipline and investigation of an African-American officer, Deputy Chief Probation Officer

Virginia Caulfield stated that she would never discipline Ms. Loeb. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

     c. Lauren Brown.

Lauren Brown is an African American juvenile probation officer who was assigned as a screener and adjudicator within a courtroom. In 2013, she received a three-month suspension for not placing notes into a computer system. A white probation officer would not have received the same discipline. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

     d. Kevin Gavin.

Kevin Gavin is a white juvenile probation officer assigned as a field probation officer. On two occasions Mr. Gavin received a written reprimand and a 1.5 day suspension on the accusation that "there are discrepancies" between his time sheets and case logs that could not be reconciled.  If an African-American probation officer committed the same conduct the accusation would be that they "falsified" their time sheets and case logs.  Defendant Chief Judge took no action to investigate this claim of disparate treatment

     e. Kalthea Seay.

Kalthea Seay is an African-American juvenile probation officer who placed a bid to transfer to another position. Although initially offered the position, defendant Chief Judge refused the transfer because of a claim Seay did not meet performance standards. In 2014, the Cook County Juvenile Probation Department transferred Susan Patla, a white probation officer, to that position, even though she was recently disciplined for testing positive for marijuana. The CBA does not permit a probation officer to transfer if they have been disciplined or do not meet

performance expectations. Defendant Chief Judge took no action to investigate of disparate treatment.

f. <u>Julie Montgomery</u>.

Julie Montgomery was an African-American juvenile probation officer for 18 years when the following series of events occurred within one year, ending her career: An allegation of misconduct by the Cook County Juvenile Probation Department compelled Ms. Montgomery to accept a "Last Chance Agreement," or else face termination. Despite her pleas of innocence as to the allegation, and the Union's pleas to her that she not accept the Last Chance Agreement, the pressure and fear of losing her job, and therefore her ability to financially support her family, caused her to accept the Last Chance Agreement. After her disciplinary sentence, the Cook County Juvenile Probation Department attempted to construct another reason to create a disciplinary investigation, but it was not sustained; subsequently defendant alleged another claim of misconduct which, although could not be proven, placed enough stress upon her to force her to resign under duress in what was a constructive discharge. Defendant Chief Judge took no action to investigate of disparate treatment.

g. <u>Joi Basley</u>.

Joi Basley was a 17-year African-American juvenile probation officer who accepted a four-month suspension after she was accused of falsification by the Cook County Juvenile Probation Department and accepted a "Last Chance Agreement" against the advice of the Union. Under the threat of termination, she accepted these terms because of her financial condition and need to support her family. When she returned to work after the suspension the Department now accused her of a lie on her timesheet because she mistakenly added one name to her "white" time sheet. Even though she admitted the mistake to her supervisor, wherein she explained that she

erroneously transferred the name from her "green sheet" to her "white sheet" after realizing she did not complete the itinerary she thought she had completed that date, the Cook County Juvenile Probation Department terminated her employment. All of the above described events happened within one year, ending Ms. Basley's career. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

       h. <u>Angela Sneed</u>.

Angela Sneed was an African-American juvenile probation officer, who after being accused by defendant of "failure to discharge her duties," accepted a "Last Chance Agreement," despite her claim of innocence, and against the advice of the Union not to accept. Sneed received a suspension, but upon completion, the Cook County Juvenile Probation Department launched another investigation of Sneed, forcing her to retire. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

       47.    The discipline records for the years 2008-2013 reveal:

       a.   The use of different and more benign language or terminology to classify the same type of misconduct when attributed to a white officer in contrast to stronger terminology or language for the same type of misconduct when attributed to an African-American officer;

       b.   The inordinate number of investigations initiated by the Cook County Juvenile Probation Department when a complaint is made against an African-American probation officer, as contrasted to the white officers;

       c.   The number of "temporary suspensions" initiated by the Cook County Juvenile Probation Department for African-American probation officers, as contrasted to the white officers for similar conduct; and

d.  A greater and more severe amount of discipline imposed by the Cook County Juvenile Probation Department upon the African-American probation officers than imposed upon the white officers for similar conduct.

**Anthony Jordan**

48.  Plaintiff Anthony Jordan was employed as a probation officer from April 1998, to February 4, 2015, when he was terminated for alleged misconduct, by purportedly failing to properly monitor and respond to electronic monitoring alerts of a particular youth assigned to his Electronic Monitoring ("EM") Unit caseload on September 10, 2014.

49.  Two days later, Mr. Jordan completed a form to notify the Juvenile Court judge assigned to the youth's case of the alleged violation by reason of the alerts.

50.  Cook County Juvenile Probation Department has repeatedly stressed to all probation officers assigned to the Electronic Monitoring Unit that the priority was to first expend efforts to have the youths released from custody or temporary detention and placed on EM – and *then* to review the electronic monitoring system daily, and complete paperwork.

51.  Anthony Jordan did his best to accomplish all those duties as his down time would permit.

52.  In this case the youth had left his home on multiple occasions, in violation of the EM order.

53.  Based upon the order of priorities, Jordan believed that he had discretion concerning when to redirect a youth's behavior, and therefore to expend time in admonishing the youth, rather than immediately fill out the report.

54.  Although Anthony Jordan had no history of discipline for failing to properly monitor and respond to EM alerts, the Cook County Juvenile Probation Department had

16

previously forced Jordan in 2011 into an unfair "Last Chance Agreement," based upon a prior claim of poor work performance.

55.     The same Cook County Juvenile Probation Department then utilized this Last Chance Agreement to support the termination of Jordan's employment.  Defendant Chief Judge, did not supervise or exercise his authority in making the unfair and unlawful decision to discharge Jordan.

56.     The action based on the alleged misconduct was racially discriminatory, since Jordan's conduct was not uncommon among probation officers assigned to the EM Unit.

57.     Other probation officers who may be late in making their reports are not terminated.   Anthony Jordan was terminated because he, as an African-American, was a convenient the scapegoat for the Department which had to blame someone for the fact that this youth committed a crime while on electronic monitoring, and that this crime received a substantial amount of Chicago-area press, TV, and radio coverage. It was easier to select or single out Jordan for this role because of his race.

**Kenneth Greenlaw**

58.     Plaintiff Kenneth Greenlaw began his career as a juvenile probation officer in 1999. Although he had no prior disciplinary record, Mr. Greenlaw was terminated on April 22, 2014, on the allegation that he misused an assigned gas card by making gas purchases outside of documented work hours and failed to submit gas receipts and vehicle inspection forms at certain times.

59.     Mr. Greenlaw was assigned to the Intensive Probation Services Unit ("IPS"), an assignment which required the use of a vehicle and constant travel to maintain frequent contact with youths on probation.

60.     Mr. Greenlaw defended these charges by denying that he misused the gas card and that his geographic area covered the south and southwest Cook County regions and also required travel outside the region for the purpose of meetings and picking up youths at the main Juvenile Court building (1100 S. Hamilton Avenue, Chicago). He also admitted to failing to do the paperwork because he believed that it was the least priority.

61.     Nonetheless, despite his impeccable record and long service, plaintiff Greenlaw was terminated by defendant Cook County Juvenile Probation Department, which stated that Mr. Greenlaw's "integrity had been compromised to the degree that [he could] no longer be entrusted to perform any duties related to this department."

62.     Here again, the Department used an African-American as a scapegoat in connection with criticisms of record keeping.

63.     Plaintiff Greenlaw was not the only probation officer who failed to complete his gas card paperwork, but he was the only probation officer terminated.  Defendant Chief Judge neither supervised nor exercised his authority in making the decision of discipline.

**Theodis Chapman**

64.     Plaintiff Theodis Chapman has a Bachelors Degree in Social Work, and a graduate degree Masters of Arts Degree (Justice Studies). Mr. Chapman was appointed a juvenile probation officer in 2003, where he has continued to work to the present, and consistently has received performance appraisals which "Exceed Standards." He has no history of discipline. Mr. Chapman adds to his work by volunteering to work with disadvantaged youth in the Chicago community, and organizing and planning events with families, such as "back to school" rallies. For these efforts Mr. Chapman has received commendations and merit bonus payments.

18

65.     Nevertheless, attempts by Theodis Chapman to become a supervisor in the juvenile probation department have met with defeat and frustration. In November 2007, and again February, 2012, Mr. Chapman took the supervisors written examination. To pass the exam a minimum score of 70 is required, yet Mr. Chapman was advised that he scored on those dates a 44, and a 57, respectively, despite diligent preparation for the examinations. On both occasions Mr. Chapman requested copies of his test and the scoring method, but he has been denied.

66.     Plaintiff Chapman alleges that a disproportionate number of African-American probation officers, some with advanced graduate degrees, are advised that they supposedly failed the supervisory examination, but have not been afforded the opportunity to review the examination results and the scoring methods. Chapman further alleges that African-American probation officers are discriminated against in this manner by reason of their race, and that the designing of the supervisory examination is either intentionally, or in effect discriminatory in excluding African-Americans from supervisory positions.

67.     Defendant Chief Judge neither supervised nor exercised his authority in making the decision of discipline.

**Patrick Nelson**

68.     Plaintiff Patrick Nelson is a college graduate, and prior DuPage County Deputy Sheriff who worked as a principal of an alternative school and was appointed a juvenile probation officer in 2001. Both .plaintiffs Nelson and Chapman filed grievances with their union claiming that they were denied compensation for time spent doing job-related training out-of-state, when white probation officers did receive compensation for similar out-of-state training. The grievances were denied by the defendant.

69.     In 2015, the Cook County Juvenile Probation Department eliminated positions occupied by Nelson and Chapman in the "Jumpstart" program under guise of reorganization.

19

70.     Rather than allow them to exercise their seniority and be reassigned to other positions within the "Jumpstart" program, the Cook County Juvenile Probation Department moved Nelson and Chapman to a field position, outside their experience within the "Jumpstart" program and without adequate training, in gross derogation of established standards.

71.     This reassignment was taken in retaliation against Nelson and Chapman for their formal complaints of race discrimination and their association in defense of their right to be free from race discrimination.

72.     Defendant Chief Judge neither supervised nor exercised his authority in making the decision of discipline.

**Class Allegations**

73.     Plaintiffs seek to certify a class of all African-American juvenile probation officers employed at any time from January 1, 2008 to the present.

74.     Pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, plaintiffs seek to certify such a class for purpose of declaratory and injunctive relief.

75.     Plaintiffs meet the prerequisites for class certification pursuant to Rule 23(a).

76.     The class of African-American juvenile probation officers employed in this period is sufficiently numerous that it is appropriate for class certification and that joinder of all affected persons is impractical.

77.     The pattern and practice of racial discrimination aggrieves all African-American juvenile probation officers, puts all class members at risk of unfair discipline, and raises common questions of fact and law.

78.      Finally, plaintiffs will adequately represent the interests of the class.

79.     Certain additional non-injunctive monetary relief and other individual relief is sought by the named plaintiffs individually in this action and are not presented as class claims at this time. The common class claims of plaintiffs for injunctive and declaratory relief are typical of those of the class pursuant to Rule 23(a), Federal Rules of Civil Procedure.

**COUNT ONE**
**Title VII of the Civil Rights Act of 1964**

80.     Plaintiffs incorporate and restate each paragraph 1 through 79, as if fully set forth in this Count and in the Counts below.

81.     By the acts set forth above, including the disparate and harsher discipline of plaintiffs and other African-American juvenile probation officers when compared with non African-American juvenile probation officers for purported offenses of the same character, and for other disparate and discriminatory treatment described above, and by tolerating such actions by subordinates without redress or correction, the defendant employer Chief Judge has violated the rights of plaintiffs and other class members under Title VII of the Civil Rights Act of 1964, as amended, to be free of racial discrimination in their employment.

82.     As a direct and proximate result of defendant Chief Judge's violation of Title VII as set forth above, plaintiffs and other class members have incurred loss of employment, loss of employment opportunities, emotional and mental suffering and other injury, and loss of their statutory rights to be free of such racial stigmatization.

WHEREFORE, Plaintiffs pray this Court to:

A.  Declare that by such actions, and in violation of Title VII of the Civil Rights Act of 1964, the defendant Chief Judge has engaged in or tolerated a pattern and practice of racial discrimination in the supervision and discipline of plaintiffs and other African-American juvenile probation officers who are under the authority of the Chief Judge.

21

B. Certify a class of all African-American juvenile probation officers pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, for purposes of injunctive and declaratory relief against the defendant Chief Judge.

C. Enjoin the defendant Chief Judge from engaging in or tolerating further violations of Title VII of the Civil Rights Act.

D. Direct that the defendant Chief Judge individually review any disciplinary action proposed by the Juvenile Probation and Court Services Department against the plaintiffs and class members and certify that such discipline is appropriate and non discriminatory under Title VII before such discipline is imposed in the first instance.

E. Reinstate plaintiffs Jordan and Greenlaw to their employment as juvenile probation officers with full back pay.

F. Award compensatory damages to plaintiffs Jordan and Greenlaw arising from their unlawful discharge.

G. Grant damages to plaintiff Nelson and Chapman and other African American juvenile probation officers who were denied compensation for out-of-state job training.

H. Direct defendant Chief Judge Evans to allow plaintiffs to review the results and scoring methods used for the written examination for supervisor.

I. Direct defendant Chief Judge Evans to submit the written examination for supervisor to review by an independent outside expert approved by this Court to ensure that such written examination is appropriately job related and non-discriminatory within the meaning of Title VII.

J. Require the Chief Judge Evans to remove or expunge discipline of African-American officers for purported or actual misconduct when non African-American officers have received less or no discipline for offenses of the same character, including but not limited to the discipline

imposed on Emily Pierce, Lauren Brown, Julie Montgomery, Jo Basley, and such other persons who suffered unfairly from the racially discriminatory system of discipline.

K.  Grant plaintiffs their damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

**COUNT TWO (Nelson and Chapman only)**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

83.     By the facts alleged above, the defendant has retaliated against plaintiffs Nelson and Chapman for exercising their rights under Title VII.

WHEREFORE, Plaintiffs pray this Court to:

A.  Order their reinstatement to positions within the "Jumpstart" program.

B.  Award them their costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm they suffered, including monetary damages.

**COUNT THREE**
**(Violation of Illinois Probation Act)**

84.     In violation of 730 ILCS 110/13 of the Illinois Probation Act, and by the actions set forth here, the defendant Chief Judge has abandoned or abdicated his statutory duty to exercise meaningful "administrative and supervisory authority" over the managerial employees of the Department of Juvenile Probation to ensure that "disciplinary action" of the plaintiffs and class members "shall be in accordance with any State or federal law that may be applicable."

WHEREFORE plaintiffs pray this Court to:

A.  Direct the defendant Chief Judge to review and approve any disciplinary action against plaintiffs and other African-American juvenile probation officers before any such discipline may be imposed initially.

B.  Direct the defendant Chief Judge to pay for and engage in a mediation program with the Local Union and take other actions that will address the discriminatory pattern and practice of discipline against juvenile probation officer.

C.  Grant plaintiffs such other relief as may be appropriate

## COUNT FOUR
### (Illinois Civil Rights Act of 2003)

85.     In violation of 740 ILCS 23/5(b), and by the acts set forth above, the defendant Chief Judge has used "criteria and methods of administration" that have the "effect of subjecting individuals" including plaintiffs and other class members "to discrimination because of their race...[.]"

86.     As set forth above, the defendant Chief Judge has abdicated his duty to exercise meaningful supervision of the discipline imposed by the Cook County Department of Juvenile Probation and has abused his discretion in failing to exercise appropriate supervision and delegating the decisions to impose discipline when he knows or should know of the racially discriminatory pattern and practice of such discipline.

WHEREFORE plaintiffs pray this Court to:

A.     Require that the defendant Chief Judge adopt "criteria and methods of administration" to prevent the imposition of racially disparate discipline, refraining from the current "hands-off" method of administration, and prospectively and retroactively review the propriety and lawfulness of discipline before such discipline is imposed.

B.  Grant plaintiffs their costs, legal fees and such other relief as may be appropriate.

Dated:  March 15, 2016                                                 By:  s/ Michael P. Persoon

Thomas H. Geoghegan
Sean Morales-Doyle
Michael P. Persoon
Despres, Schwartz & Geoghegan, Ltd.
77 W. Washington St., Ste. 711
Chicago, Illinois 60602
(312) 372-2511
mpersoon@dsgchicago.com