UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY JORDAN, <br> KENNETH GREENLAW, <br> THEODIS CHAPMAN, <br> PATRICK NELSON, <br> and A CLASS OF UNKNOWN PERSONS <br> SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> vs. <br><br> TIMOTHY EVANS, CHIEF JUDGE OF THE <br> CIRCUIT COURT OF COOK COUNTY, <br> COOK COUNTY'S JUVENILE <br> PROBATION AND COURT SERVICES <br> DEPARTMENT, <br> MICHAEL ROHAN, <br> CHARLES YOUNG, <br> ROSE MARIE GOLDEN, <br> WILLIAM PATTERSON, <br> and UNKNOWN PERSONS, <br><br> Defendants. | No. 15 CV 5907 <br><br> Judge Sara L. Ellis <br><br> JURY DEMANDED |

## PLAINTIFF PATRICK NELSON'S
## OBJECTIONS AND ANSWERS TO DEFENDANT'S INTERROGATORIES

**INTERROGATORY NO.1:** State the full name, address, and telephone number of each person answering or assisting in answering these interrogatories.

**ANSWER:**
Patrick Nelson: 2433 West Washburne, Chicago IL 60608 (708 989 1676) as well as attorneys at the law firm Despres, Schwartz & Geoghegan, Ltd.

**INTERROGATORY NO. 2:** For each person you believe has knowledge of any of the facts underlying your claims against Defendant, please state their full name, last known home and business address and telephone number, and relationship to you, along with the following:
(a) Current employer and position and, if formerly employed by Defendant or by Cook County Juvenile Probation Department, state when and in what position;
(b) The facts or information which you believe to be the substance of his or her knowledge and the source of such knowledge; and
(c) The identity of any documents which relate to the person's information or knowledge, including any written statements.



ANSWER: Plaintiff provided this information in the Rule 26 disclosures. In addition:
(a) Jason Smith, 3515 W. Cermak Chicago, IL 60623, 1100 S. Hamilton 773 242-4658,
Co Worker Office of the Chief Judge, Cook County Juvenile Field Probation Officer, and the persons named in the listing of documents below.

(b) Jason Smith and the others named in (c) below could present information as to the basis of the discrimination with respect of discipline alleged in the complaint

(c) The documents include the Cook County Juvenile Probation original bid list and the modified bid list that was established after the claim of discrimination was raised; the Cook County Annual Probation Plan; an email sent by Alicia Ortiz to the Union with regard to Blacks; the EEOC charges and lawsuits filed by Paula Williams, Cheryl Anderson and Argentry Mitchell and EEOC charges and Labor Board charges and grievances relating to my removal from Jump Start filed by Theo Chapman and myself; grievances and EEOC charges filed by Howard Brown, Lauren Brown, Kletha Seay, Joy Baisley, Kenneth Greenlaw, Ernest Boyd, Emily Pierce, Buford Arrington, and Jeannie Wells; the statement of Michael Willis to the Illinois Human Rights Commission; the list provided by Rose Golden re disciplinary decisions; a statement describing discriminatory discipline sent to AFSCME District Council 31; an affidavit by Ed Walsh regarding his own discipline; emails between Jason Smith and the following: Michael Willis and Alicia Ortiz.

Investigation is continuing.

Plaintiff otherwise objects to the overbreadth of the Interrogatory.

**INTERROGATORY NO.3:** Except for any of your attorneys, identify all persons not identified in Interrogatory No.1 with whom you have discussed your claims against Defendant and, for each person, please state their full name, last known home and business address and
telephone number, and relationship to you, along with the following:
(a) When and where the discussion(s) took place;
(b) The substance of the discussion(s); and
(c) The identity of any documents which relate to the discussion(s), including any written statements.

ANSWER:
I discussed my claims with EEOC investigators and Jason Smith. The discussions with Jason Smith and EEOC investigators were on the phone generally. The substance of the conversations was the manner in which the department discriminates and retaliates against African American juvenile probation officers; and why the Chief Judge and his designees refuse to address the claims of such officers made from 2014 to the present. Of course the EEOC charges relate to the discussions.

I object on the basis of relevancy to discussions with family members and to others not directly involved in this action.

**INTERROGATORY NO.4:** Describe in detail your job duties, including any and all individuals you reported to, during your time employed with Cook County Juvenile Probation

Department.

**ANSWER:**
At the time of the filing of this action on July 5 2015 - I was working in the JUMPSTART program. I was doing all aspects of the JUMPSTART program: while I did instruction, I also did outreach - occasionally visiting students in their homes. The mission of the JUMPSTART program was then and is now to provide out-of-school delinquent youth with a 20-week, success-readiness experience that will prepare them educationally, emotionally and psychologically for a successful return to community- based learning programs. The program seeks to refocus and redirect those minors lacking the necessary initiative, skills, self-motivation and appropriate behavior to continue their educations in the traditional public school setting.

After filing this suit, I was removed from the JUMPSTART program, and with no adequate time to train, assigned to be a field probation officer. My territory is the north division. I now work half time because of a workplace injury.

**INTERROGATORY NO.5:** Describe in detail the factual bases for your allegation in Paragraph 38 of your Complaint that "[r]ecently the defendant Chief Judge has permitted or acquiesced to actions of the Cook County Department of Juvenile Probation in making bad faith claims of misconduct by white or non-African-American probation officers so as to portray past and current disciplinary acts as evenhanded for all probation officers, regardless of race." For each instance of this conduct, please identify:
(a) What "bad faith claims of misconduct" you assert have been made by the Cook County Department of Juvenile Probation;
(b) The date on which each such claim was made;
(c) The name and race of each probation officer against whom the "bad faith claims of misconduct" were made;
(d) The result of each of these" bad faith claims of misconduct"
(e) All documents which relate to the allegation in Paragraph 38, including any written statements;
(f) All communications regarding in any way the allegations in Paragraph 38.

**ANSWER:**
I understand from Jason Smith that Ed Walsh signed an affidavit capturing the comments that were made during his grievance hearing that justified or indicated his punishment was designed to head off complaints that white officers were not disciplined as harshly.

Walsh initially received a three-day suspension but it was reduced to a one day suspension. The comments were made at a meeting at the Office of the Chief Judge with his designee. I was a union steward and was present at discussions of the Walsh case.

Emails were exchanged between Jason Smith and Ed Walsh about the comments.

**INTERROGATORY N O. 6:** Identify all instances of which you are aware of where "actions by white officers did not receive the same discipline or scrutiny as actions by their African-American peers," as alleged in Paragraph 32 of your Complaint. For each instance of this conduct, please identify:

(a) The names of the white probation officers and the misconduct you contend they committed;
(b) The names of the African-American officers you contend were subjected to different "discipline or scrutiny" and the misconduct you contend they committed;
(c) The dates of the alleged misconduct for the individuals identified in subparts (a) and (b);
(d) The result of any disciplinary action taken against the individuals identified in subparts (a) and (b);
(e) All documents which relate to the allegation in Paragraph 32, including any written statements.
(f) All communications regarding in any way the allegations in Paragraph 32.

**ANSWER:**
a) I understand from Jason Smith that white officers who were treated in a lenient manner include:
• Julie Perfetti –   for falsification of her work records, i.e., recording visits that she did not make on 6.17.10.
• Kevin Gavin –   for falsification of his work records 3.22.10 & 5.17.13.
• Dina Randazzo – for falsification of her work records 7.16.10.
• Rosa Altamirano - for falsification of work records 6-17-10.
• Christian Loeb -   no discipline despite failure to complete sentencing reports on many occasions.
• Paula Shanahan - no discipline despite her conduct in changing a judge's release order for a juvenile. The minor was released to an adult not approved by the judge, the minor ended up being shot several times in the custody of the non-approved adult.   She received no discipline.
• Brian Modeski and William Pieroth - no discipline in the matter for which Anthony Jordan was fired, though they had at least as much or more responsibility for the juvenile's escape from electronic monitoring.

As union steward, I also have some general familiarity with the Paula Shanahan matter and the other cases described above.

b) I understand from Jason Smith that like many African American officers, but unlike white officers, Julie Montgomery had to accept a last chance agreement for falsification of case records (Terminated) 4.17.12.   As a union steward, I was aware of last chance agreements like the one signed by Anthony Jordan - which were inconsistent with the collective bargaining agreement, but existed for African American officers.   I have some familiarity with the following:

• Joy Baisley who had to accept a last chance agreement for falsification of case records-   6.6.13 (Terminated).
• Anthony Jordan who had to accept a last chance agreement which made it so easy to terminate me (Terminated).
• Lauren Brown disciplined for falsification)- 7.27.11.
• Angela Stockdale who was forced to retire 3.20.10 & 8.20.10 (forced retired).

The grievances filed in these cases provide the relevant documents relating to those allegations.

**INTERROGATORY NO.7:** Identify all instances of the alleged "disparate treatment of African-American juvenile probation officers" referred to in Paragraph 41. For each instance of such conduct, please identify:
(a) The names of the African-American probation officers you contend were subjected to "disparate treatment," and the non African-American probation officers who you are

using as comparators;
(b) The nature of the "disparate treatment" for the individuals identified in subpart (a);
(c) The dates of the "disparate treatment" for the individuals identified in subpart (a);
(d) The means by which the Union "directly notified" Defendant of this disparate treatment;
(e) All documents which relate to the allegation in Paragraph 41, including any written statements;
(f) All communications regarding in any way the allegations in Paragraph 41.

**ANSWER:**
All African American juvenile probation officers were at least subject to racially disparate discipline under the applicable policies of the JPD. Aside from those actually disciplined identified in the answer immediately above, I understand from Jason Smith that other officers were not allowed transfers to other units when their units were closed. Whites in closed units could transfer or were more likely to have transfer rights. For example, comparators include Susan Patla and Susan Curcio, white officers who could and did transfer to other units when their own largely white units were closed. Furthermore, largely African American units like the Mentoring Unit and the Street Dreams Unit were singled out for closure. The instruction side of the JUMPSTART program was also eliminated, and that kind of instruction - to teach children how to become students - no longer exists and has had a racially discriminatory effect on the instructors and the children.

The disparate treatment consists of the unfair discipline described above, the elimination of units whose members were largely African American, elimination of programs in which African American officers were especially involved, and violations of seniority rights of African American officers. The disparate treatment also includes the elimination of our positions in the JUMPSTART and the harsh treatment and reprisal that African American members like me received when we tried to involve the Chief Judge in these disciplines.

The Union "directly notified" the Chief Judge through grievances, formal letters and filing of charges with the EEOC and the Human Rights Commission. Relevant documents and communications have been identified in other answers or will be produced.

**INTERROGATORY NO. 8:** Describe in detail all factual bases for your allegations in Paragraphs 46 regarding the "disparate treatment of juvenile probation officers," and for the allegation that such disparate treatment was based on race. Also, identify how you became aware of the facts set forth in Paragraph 46, and identify all documents or communications that support the allegations set forth in Paragraph 46 of your Complaint, including any written statements.

**ANSWER:**
The factual basis or bases come from the research of Jason Smith and the allegations in the complaint showing the disproportionate number of African American officers who were disciplined compared to white officers, the harsher nature of the discipline received by African American officers for similar offenses. The disparate treatment comes in part from the lack of set punishments for these offenses, which has led to a disparate pattern of discipline falling more harshly on African Americans than on whites. The Chief Judge has not intervened to ensure set punishments or equal treatment.

The language used in disciplines of African American officers is harsher than language used for the same offenses committed by white officers; and the language used in disciplining white officers for the same offense is typically less harsh, so as to justify either a more lenient punishment, or a verbal reprimand or no punishment.

The supervisory examinations are not job qualified and used to exclude African American officers from promotion.

Theo Chapman and I were subject to unfair evaluation procedures. Recently we won a grievance that required that the managers raise our performance standards to "exceeding standards" and give us bonus pay. I have now been subject to retaliation because the 2015 performance appraisal was not appropriate as well and William Paterson denied the grievance for being "untimely."

The 2013 restructuring proposal draft of Cook County Juvenile Probation Officers had a disparate impact on African American supervisors who supervised predominantly African American units.

Finally, management does not support African American probation officers in the way they support white probation officers who engage in outside community activities. For example, I am a Juvenile Justice Commissioner for the State of Illinois. The commission makes recommendations to the General Assembly and the Governor for improvement of the lives of children in the court system. If a white officer is engaged in such an activity, he or she has time to participate in such meetings or receive other support because it involves our client population. But I do not get paid time to go and make it hard for me to stay on the commission.

Other documents supporting the allegations include Rose Golden's discipline list provided to the Union; the complaint filed by AFSCME Local 3477 and the statement of Michael Willis to the Illinois Human Rights Commission.
In my case the training hours were suspiciously lost and subsequently new training was required in order to recoup the training hours lost by management.

**INTERROGATORY NO.9:** Identify all instances in which you allege, as set forth in Paragraph 66 of your Complaint, that "African-American probation officers, some with advanced graduate degrees, are advised that they supposedly failed the supervisory examination, but have not been afforded the opportunity to review the examination results and the scoring methods." For each instance, please identify:
(a) The names of the African-American probation officers you contend were advised that they failed the supervisor examination;
(b) The names of the individuals identified in subpart (a) with advanced graduate degrees;
(c) The nature of the advanced graduate degrees held by the individuals identified in subpart (b), and the names of the institutions that issued these degrees;
(d) All documents which relate to the allegation in Paragraph 66, including any written statements;
(e) All communications supporting the allegations in Paragraph 66.

**ANSWER:**
(a) Russel Akis, Rance Hopkins, Rodney Purdy Blake, Michael Porter, Ledonna Rollins, Michelle Bailey, Kistha Roberts Tabb, Theo Chapman and myself.

(b-c) I believe those with advanced degrees or pursuing such degrees include Russell Akiks and Michelle Bailey

(d) Relevant documents include the Cook County Probation Department Supervisory List 2008-present and the examinations themselves as well as the scoring sheets (documents that I do not have)

Investigation continues.

**INTERROGATORY NO. 10:** Describe in detail all factual bases for your allegation in Paragraph 66 of your Complaint that African-American probation officers are discriminated against with respect to the supervisory examination "by reason of their race, and that the designing of the supervisory examination is either intentionally, or in effect discriminatory in excluding African-Americans from supervisory positions." Also, identify all documents or communications that support the allegation set forth in Paragraphs 46 of your Complaint, including any written statements.

**ANSWER:**
The test is set up like a survey or questionnaire for employment rather than an actual test that measures a seasoned officer's actual knowledge of the relevant duties, assignments, programs, policies, and day to day operations.

The design of the exam is discriminatory because the examination will draw on the knowledge base of a specific group - for example, the so called clinical probation officers who are largely white- and because it leaves the determination of right and wrong answers to the subjective beliefs of management; it is not an objective neutral test to gauge the knowledge, understanding and concepts of the responsibilities, duties, policies and day to day functions of a probation officer. The exam is designed in that sense for those individuals whom the defendants want to pass.

**INTERROGATORY NO. 11:** With respect to the allegation set forth in Paragraph 68 that you were denied compensation for time spent doing job-related training out-of-state, please identify
(a) The nature of the job-related training you received;
(b) Where the job-related training you received took place;
(c) When you received the job-related training;
(d) How much time you spent at the job-related training;
(e) How much compensation you contend you were denied for out of state training;
(f) All documents which relate to the allegation in Paragraph 68, including any written statements;
(g) All communications regarding in any way the allegations in Paragraph 68.

**ANSWER:**
(a) The job training was for the special problems of children with disabilities - including legal, advocacy and educational strategies.
(b) The training was in San Antonio Texas.
(c) The training occurred on March 2,3,4,5,6 in 2011.
(d) The training took 35 hours, with 14 hours incurred on weekend Sat/Sun.
(e) The amount denied was $630; we were paid straight time instead of "comp" time which is the same as overtime -namely, time and a half.

**(f) Relevant documents include the grievances we filed.**

**Plaintiff objects that the inquiry about all communications is overbroad.**

**INTERROGATORY NO. 12:** With respect to the allegation set forth in Paragraph 68 that white probation officers received compensation for out-of-state training similar to the training you were not paid for, please identify
(a) The names of the white probation officers who you contend received compensation for "similar out-of-state training;"
(b) The nature of the "similar out of state training" received by the individuals listed in subpart (a);
(c) The amount of compensation received by the individuals listed in subpart (a) based on their "similar out of state training;" (d) All documents which relate to the allegation in Paragraph 68, including any written statements;
(e) All communications regarding in any way the allegations in Paragraph 68.

**ANSWER:**
**I understand that two white officers - Richard Tekip, former PO in Education Advocacy and Carolyn Conway former PO in Education Advocacy - did receive higher compensation for training similar to that we undertook in San Antonio as described above. I received this information from Richard and Carolyn. They received "comp" time or time and a half instead of "straight" time.**

**INTERROGATORY NO. 13:** Describe in detail all factual bases for your allegation in Paragraph 70 of your Complaint that your reassignment to a field position was "outside [your] experience within the' Jumpstart" program and without adequate training, in gross derogation of established standards." Also, identify all documents or communications that support the allegation set forth in Paragraphs 70 of your Complaint, including any written statements.

**ANSWER:**
**I was recruited initially in the JUMPSTART program. And I was removed from the JUMPSTART program in November 2015 after the filing of this suit on July 5, 2015. I was assigned to be a field probation officer to start work in just a matter of days without any reasonable training and preparation. Until then I had worked exclusively in JUMPSTART. Being a field probation officer requires a different skill set from that of an instructor, and the training I had in this area was fifteen years ago. I should have had six to eight weeks of training. As to relevant communications, Avik Das, then the interim director, told us in a meeting that I was not being removed because I had filed the lawsuit. Ms Jackson who had much less seniority was retained while Theo Chapman and I were removed. Dale Lomax was brought in - and he also had much less seniority. There are now two other officers have come into the unit, despite the fact that Theo Chapman and I were told that the unit was closed and there was no need for other officers. Relevant documents include grievances sent to the DCPO.**

**Investigation continues.**

**INTERROGATORY NO. 14:** Describe in detail all factual bases for your allegation in Paragraph 71 of your Complaint that reassignment to a field position was "taken in retaliation against Nelson and Chapman for their formal complaints of race discrimination and their association in defense of their right to be free from race discrimination." Also, identify all documents or communications that support the allegation set forth in Paragraphs 71 of your Complaint, including any written statements.

**ANSWER:**
See the answer to interrogatory No. 13. Theo Chapman and I - the two officers removed - had more seniority contractually as well as more experience than less senior officers who remained as JUMP START instructors. We both had been union stewards who had supported Jason Smith in alleging racially disparate discipline and demanding oversight by Judge Evans over Das and other management. We had previously filed EEOC claims. The violation of our contractual seniority rights, the disregard of our longer and superior experience, and the timing of our removal, as well as the remarks of Avik Das that he was not responding to the federal lawsuit, allow for an inference of a retaliatory motive.
Documents include grievance and various emails relating to our removal
Communications include those at labor management meetings and meetings with Eugene Boatright and Scott Miller of AFSCME Council 31

Six weeks ago I also saw Keith Sevick - the Chief Judge's designee at the juvenile court house at Ogden and Roosevelt. He asked: "Have things gotten better?" Theo said: No, they're still discriminating and retaliating against me. He said, "At least you have a job." I heard this exchange.

**Investigation continues.**

**INTERROGATORY NO. 15:** Since November 2007, have you received any medical, psychological or psychiatric evaluation, diagnosis, counseling and/or treatment, or any other counseling or treatment for any emotional distress or other injuries you contend were caused by the conduct alleged in the Complaint? If so, please:
(a) State the full name, last known business address and telephone number of each person from whom you received such counseling or other treatment; and
(b) List the date or dates of this counseling or other treatment, and describe the diagnosis made and treatment prescribed or rendered, if any, including the name and dosage of any prescribed medications; and
(c) Identify all documents which relate to such counseling or treatment,

**ANSWER:** I received psychological counseling from **Adriana Gonzalez Sandrolini, LCSW, CADC
Go So Consulting
1111 Westgate, Suite 116** Oak Park IL

**INTERROGATORY NO. 16:** Identify all persons with knowledge as to any physical or mental condition or injury which you believe resulted from the conduct alleged in the Complaint, and for each such individual state his or her first and last name, address and telephone number.

**ANSWER:** See answer to Interrogatory Number 15. I also removed into the unit of a new deputy probation officer in November 2015. I was required to move all my old boxes and the new deputy probation officer threatened to have the Sherriff's Office to confiscate all my material unless removed by November 25, 2015. I took her seriously and rushed to carry out boxes and slipped and fell and sustained a serious injury - a herniated disc, with nerve damage.

**INTERROGATORY NO. 17:** In addition to the information provided in your answer to Interrogatory No. 15 above, have you, at any time between November 2007, through the present, received any evaluation, diagnosis, treatment or counseling from a psychiatrist, psychologist, counselor, therapist, social worker or other healthcare professional relating to your emotional, psychological or mental health? If so, please:
(a) State the full name, last known business address and telephone number of each person from whom you received such counseling or other treatment; and
(b) List the date or dates of this counseling or other treatment, and describe the diagnosis made and treatment prescribed or rendered, if any, including the name and dosage of any prescribed medications; and
(c) Identify all documents which relate to such counseling or other treatment.

**ANSWER:** See answer to interrogatory number 15.

**INTERROGATORY NO. 18:** Have you applied for employment of any kind since November 7, 2007 If so, for each such application please state:
(a) The full name, business address, and telephone number of the prospective employer and the date of the application;'
(b) The job title or nature of the work applied for;
(c) Whether you placed any restrictions on the hours or days you were available to work, withdrew your application, failed to complete any portion of the application process, or otherwise indicated that you were no longer interested in the position;
(d) Whether you received a response and, if so, the date and substance of such response;
(e) Whether you received an interview and, if so, the name of the person(s) who conducted the interview;
(f) Whether you rejected an offer of employment or otherwise discontinued the application process; and
(g) The identity of all documents relating to or referring to each application for employment or to matters referred to in your answer to this Interrogatory and identify the custodian of each document.

**ANSWER:**

**No.**

**INTERROGATORY NO. 19:** Other than your work with Defendant, have you been employed at any time since November 7, 2007? If so, please state for each employer and assignment:
(a) The name, address and telephone number of the employer and the dates of your employment;
(b) Your title or position and the nature of your job duties'
(c) Your salary or wage rate, and your total earnings for each year, or part thereof, you worked for the employer;

(d) Whether you placed any restrictions on the hours or days you are or were available to work;
(e) The reasons such employment terminated, if applicable; and
(f) The identity of all documents relating to or referring to such employment or to matters referred to in your answer to this Interrogatory and identify the custodian of each document.

**ANSWER:**

**Not applicable.**

**INTERROGATORY NO. 20:** Have you been self-employed at any time since November 7, 2007? If so, please provide the following information:
(a) The nature of the self-employment;
(b) The business name, if any, under which you operated;
(c) The dates during which you were self-employed;
(d) The approximate number of hours you devoted each week;
(e) Your gross revenues and net earnings each year, or part thereof, as a result of such self-employment; and
(f) The identity of all documents relating to or referring to such self-employment or to matters referred to in your answer to this Interrogatory.

**ANSWER:**

**Not applicable.**

**INTERROGATORY NO. 21:** Have you been hospitalized or otherwise unable to work fulltime at any time since November 7, 2007? If so, please state for each such period:
(a) The dates you were hospitalized or otherwise unable to work;
(b) The reason you were hospitalized or otherwise unable to work;
(c) The full names, business addresses, and telephone numbers of the hospitals and treating physicians, if any; and
(d) The identity of all documents relating to or referring to such period or to matters referred to in your answer to this Interrogatory and identify the custodian of each such document.

**ANSWER:**

**I have been on workmen compensation but this is not applicable in that it did not keep me from seeking other work.**

**INTERROGATORY NO. 22:** Describe in detail all amounts and sources of income, including but not limited to any payments, wages, salary, compensation, deferred or contingent compensation, bonus, incentive, options, unemployment income, worker's compensation income, social security disability payments, sick leave, disability pay, medical insurance, pension benefits, insurance payments, alimony/maintenance/child support payments, gifts, inheritances, and/or welfare or public assistance of any kind that you have received and/or applied for since November 7, 2007. If you have received such income, state:
(a) The name and address of each agency from whom you have received such benefits;

(b) The date(s) of your application for such benefits and the location where each such application was forwarded or delivered;

(c) The date and amount of each payment of such benefits received and the period(s) for which it was paid; and

(d) The date and reasons for any rejection of a claim.

**ANSWER:**
**Cook County Juvenile Probation and Court Services -no extra income.**


**INTERROGATORY NO. 23:** Describe in detail the basis for any damages you claim to be entitled to, including but not limited to the damages articulated in your Prayer for Relief.

**ANSWER:**
**I have suffered acute emotional and mental distress from working in a racially hostile work place and the loss of my position in JUMPSTART.**



Dated: August 23, 2017                                By: /s/ Thomas H. Geoghegan
                                                              One of Plaintiffs' Attorneys


Thomas H. Geoghegan
Michael P. Persoon
Sean Morales-Doyle
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
admin@dsgchicago.com
(312) 372-2511

## **Verification**

    I, Patrick Nelson, hereby swear that I have reviewed the **Answers and Objections to Defendant's First Interrogatories**, and that the facts set forth therein are true and correct to the best of my knowledge, information, and belief.

Date: 8/22/17

Signed: /s/ Patrick Nelson

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused the foregoing **Plaintiff's Interrogatory Answers and Objections** to be served upon the following persons via email on August 23, 2017:

John R. Hayes
Assistant Unit Supervisor
General Law Bureau
Office of the Illinois Attorney General
100 W. Randolph Street 13th Floor
Chicago, Illinois 60601
jhayes@atg.state.il.us

                                                By:    /s/ Thomas H. Geoghegan

Thomas H. Geoghegan
Michael P. Persoon
Sean Morales-Doyle
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
tgeoghegan@dsgchicago.com
(312) 372-2511