# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|                                    |     |                      |
|------------------------------------|-----|----------------------|
| ANTHONY JORDAN, KENNETH            | )   |                      |
| GREENLAW, PATRICK NELSON,          | )   |                      |
| and THEODIS CHAPMAN                | )   |                      |
|                                    | )   |                      |
| Plaintiffs,                        | )   |                      |
|                                    | )   | No. 15 C 5907        |
| v.                                 | )   |                      |
|                                    | )   | Judge Sara L. Ellis  |
| TIMOTHY EVANS, CHIEF JUDGE         | )   |                      |
| OF THE CIRCUIT COURT               | )   |                      |
| OF COOK COUNTY, ILLINOIS,          | )   |                      |
|                                    | )   |                      |
| Defendant.                         | )   |                      |

## OPINION AND ORDER

After working as Cook County Juvenile Probation Officers and having been terminated or transferred to a less desirable position, Plaintiffs Anthony Jordan, Kenneth Greenlaw, Patrick Nelson, and Theodis Chapman, on behalf of themselves and a putative class of similarly situated individuals, sued Defendant Timothy Evans, in his official capacity as Chief Judge of the Circuit Court of Cook County, Illinois, alleging discrimination based on race and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Illinois Civil Rights Act of 2003 ("ICRA"), 740 Ill. Comp. Stat. 23/5(b). Evans moves to dismiss Plaintiffs' class claims and for summary judgment on Plaintiffs' individual claims. The Court grants Evan's motion to dismiss the class claims because Plaintiffs have abandoned those claims. The Court grants Evan's motion for summary judgment in part and denies it in part. Because no reasonable juror could conclude that either Jordan's or Greenlaw's race caused their termination based on the evidence presented on summary judgment, the Court grants Evans' motion for summary judgment against both Plaintiffs. Additionally, because the statute of

limitations bars Nelson's and Chapman's claims regarding the supervisor's exam, the Court grants Evans' motion for summary judgment on those claims. Finally, because genuine issues of material fact exist regarding whether Nelson's and Chapman's transfers effectively amounted to a demotion and whether Evans' reason for the transfers was merely pretext, the Court denies Evans' motion for summary judgment on those claims as to Nelson and Chapman.

## BACKGROUND[1]

Timothy Evans, as Chief Judge of the Circuit Court of Cook County, has the ultimate authority in termination and other disciplinary actions in the Cook County Juvenile Probation Department ("JPD"). As such, Plaintiffs are suing him in his official capacity. Jason Smith is the Union representative for each Plaintiff. He compiled an analysis of JPD's past disciplines, finding that, although African-Americans made up approximately forty percent of the JPD probation officer workforce, from 2008 to 2013, JPD issued approximately seventy-five percent of the total suspensions and terminations to African American officers.

### I.     Anthony Jordan

Anthony Jordan, an African American, began working for JPD as a Juvenile Probation Officer in April 1998. In 2007, JPD suspended Jordan following an arrest for possession of cannabis and domestic battery. Michael Rohan, the director of JPD at the time, made the decision to suspend Jordan. The following year, in 2008, JPD again suspended Jordan following allegations that he sexually harassed an intern. Rohan made the decision to suspend Jordan after this incident as well. In 2010, Jordan received a verbal reprimand for using profanity toward a coworker. Because of these disciplinary issues, JPD placed Jordan on a three-month supervision

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. The Court has considered Plaintiffs' additional statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to Plaintiffs, the non-movants.

plan in November 2010.  In 2011, Jordan received another suspension and JPD also suspended his supervisor, Michael Willis.  In October 2011, Jordan entered into a Last Chance Agreement with JPD, which stipulated that in lieu of termination, Jordan would comply with certain restrictions and expectations, and if he failed to abide by the restrictions or meet the expectations, JPD would terminate his employment.

In April 2014, Jordan moved to the Electronic Monitoring Division, where he supervised the electronic monitoring of fifteen to twenty juveniles.  On September 16, 2014, JPD suspended Jordan because a probationer on Jordan's caseload committed rape while under Jordan's supervision.  This incident received significant media coverage.  Jordan submitted a violation report for this probationer on September 14 but did not submit any earlier violation reports for the probationer despite unauthorized movements overnight on August 29 and September 3. Following a final suspension and a pre-disciplinary meeting, JPD terminated Jordan on February 3, 2015, citing his failure to monitor the electronic monitoring software on a daily basis and appropriately respond, his failure to abide by JPD's code of conduct, and the fact that he was still subject to the Last Chance Agreement.  Neither his supervisor, Brian Modjeski, or Modjeski's supervisor, William Pieroth, suffered any discipline as a result of Jordan's failure to submit a violation report.  Rose Golden made the decision to terminate Jordan in this instance.

Jordan only knows of one white employee who entered into a Last Chance Agreement, Joseph Wozniak, a white non-officer at JPD.  Wozniak entered into the Last Chance Agreement after making serious threats to a supervisor, and JPD did not terminate Wozniak after excessive absenteeism while he was still subject to the Last Chance Agreement.

## II.     Kenneth Greenlaw

Kenneth Greenlaw, an African American, began working as a Juvenile Probation Officer in 1999.  When JPD terminated Greenlaw in 2014, he was serving as a Compliance Officer with the Intensive Probation Services Division ("IPS").  His job responsibilities included making visits to juveniles' homes and schools to verify that juvenile probationers were complying with the conditions of probation.  In carrying out these responsibilities, Greenlaw used a JPD-administered gas card for his department vehicle.  JPD required users of the JPD-issued gas cards to keep their receipts and document the information on a vehicle inspection sheet before and after their shifts.

On March 10, 2013, JPD convened an investigatory hearing relating to Greenlaw's alleged misuse of his JPD-issued gas card, specifically forty-five instances of gas purchases made twice daily that did not correspond with the miles Greenlaw traveled, three instances of gas purchased at the beginning of a shift when gas had been purchased at the end of the previous shift, three instances of gas purchases made outside of documented work hours, one instance of a gas purchase made on a day Greenlaw documented he worked the full day in the office, twenty-eight occasions of missing gas receipts, and forty instances of missing vehicle inspection forms. After Greenlaw's rebuttal hearing a month later, Rohan recommended Greenlaw's termination based on JPD's investigation, finding that Greenlaw had fraudulently used his gas card on multiple occasions and that his non-compliance with department protocols and misuse of the gas card constituted the equivalent of theft of services.  JPD subsequently terminated Greenlaw's employment.  The only other individual whom Greenlaw knows JPD terminated for misuse of an assigned department gas card was Ernest Boyd, his former partner, who is also African American.

### III. Patrick Nelson and Theodis Chapman

Patrick Nelson and Theodis Chapman, both African American, began working for JPD as Probation Officers with the Jumpstart program in 2001 and 2003, respectively. During their training, JPD did not pay Nelson and Chapman the time-and-a-half out-of-state rate that other, non-African American, employees received. The Jumpstart program provided education to juvenile probationers who are not complying with educational services or not going to school. Both Nelson and Chapman worked as teachers in the Jumpstart program. During their time with the Jumpstart program, the attendance at the program fell significantly from a high of seventy students per class to approximately twelve students per class.

Both Nelson and Chapman filed two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against JPD, first in August 2014, and then in December 2015, alleging race discrimination, and subsequently, retaliation for their original discrimination charges and for joining this lawsuit.

On September 18, 2015, a little over a month after serving Evans with the complaint in this case, Evans notified the Union that he intended to close or reorganize Jumpstart and transfer Chapman and Nelson to field probation officer positions. He did so in November 2015, eliminating the instruction component of Jumpstart and transferring Nelson and Chapman to field probation positions. No one filled their former positions with Jumpstart. Their salaries did not change; however, they worked more hours and the hours were less regular. Both Nelson and Chapman lost any opportunity for professional development in the field of alternative education, an area in which both had expertise and in which they wished to continue working. During a meeting with Avik Das, the Acting Director and Chief Probation Officer of JPD, Das told

Nelson, unsolicited, that Nelson's filing of this lawsuit was not why JPD removed him from the Jumpstart program.

After the reorganization, a few desirable education and advocacy positions in the Jumpstart program remained. The collective bargaining agreement requires JPD to fill new positions by seniority after a department-wide bid. Neither Nelson nor Chapman submitted bids for the new positions created by the reorganization of Jumpstart; however, JPD departed from standard procedure and did not put new positions, such as the one given to Tatanisha Jackson, up for bid. Both Nelson and Chapman testified that they would have submitted bids for the Jumpstart positions if they had the opportunity.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I.      Motion to Dismiss Plaintiffs' Class Claims

Evans moves first to dismiss Plaintiffs' class discrimination claims.  The Court

previously ordered Plaintiffs to file a motion for class certification by January 16, 2018.  Doc.

97.  Plaintiffs did not file any such motion, and instead, represented at the status hearing on May

31, 2018 that they were not pursuing the class claims.[2]  The Court therefore dismisses Plaintiffs'

class claims and considers only the individual claims.

### II.     Motion for Summary Judgment on Jordan's and Greenlaw's Discrimination Claims

First, Evans moves for summary judgment on Jordan's and Greenlaw's discrimination

claims.  Jordan and Greenlaw claim that Evans terminated their employment based on their race

in violation of Title VII and ICRA.  The analysis of racial discrimination claims under ICRA is

the same as that under Title VII; thus, the Court addresses both under the Title VII standards.

*See, e.g.*, *Hosick v. Chicago State Univ. Bd. of Trs.*, 924 F. Supp. 2d 956, 966 (N.D. Ill. 2013).

To prove a claim for race discrimination, Jordan and Greenlaw must demonstrate that the

evidence, considered as a whole, would permit a reasonable factfinder to conclude that their race

caused an adverse employment action.  *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir.

2016).  *Ortiz* does not preclude the *McDonnell Douglas* burden-shifting framework.  *Id.*;

---

[2] Even without such a representation, Plaintiffs did not address any of Evans' arguments regarding the viability of the class and have, therefore, waived any argument contesting the dismissal of these claims. *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1336 (7th Cir. 1992) (finding that plaintiff waived responsive argument when it did not present the argument during summary judgment briefing). Furthermore, Plaintiffs' delay in moving for class certification suffices to dismiss the class claims.  *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993) (delay in moving for class certification "is reason for denial of class certification, because [the proposed class representative] failed to timely protect the interests of the class members").

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

To establish a *prima facie* case under the *McDonnell Douglas* framework, Jordan and Greenlaw

must show that: (1) they belong to a protected class, (2) their job performance met their

employer's legitimate expectations, (3) they suffered an adverse employment action, and (4)

another similarly situated individual, who was not a member of their protected class, received

more favorable treatment. *McDonnell Douglas*, 411 U.S. at 803; *Orton-Bell v. State*, 759 F.3d

768, 777 (7th Cir. 2014). If Jordan and Greenlaw establish a *prima facie* case, the burden shifts

to Evans to articulate a legitimate, nondiscriminatory reason for their termination, which they

may then attack as pretext. *McDonnell Douglas*, 411 U.S. at 802. The Court first considers the

evidence through the *McDonnell Douglas* framework and then turns to a cumulative review of

the evidence to determine whether a reasonable factfinder could determine that Jordan's and

Greenlaw's race caused their termination. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*,

846 F.3d 216, 224 (7th Cir. 2017).

     **A.**    ***McDonnell Douglas***

     The parties do not dispute the first and third elements of the *McDonnell Douglas*

framework: both Jordan and Greenlaw are African American, and JPD terminated their

employment. The primary issues for both Jordan and Greenlaw, therefore, are whether their job

performances met JPD's legitimate expectations and whether JPD treated similarly situated

individuals more favorably. Neither Jordan nor Greenlaw argue that their performances on the

job met JPD's legitimate expectations; rather, they argue that they received disparate

punishments for their failure to meet JPD's legitimate expectations because of their race. *See*

*Orton-Bell*, 759 F.3d at 777 (finding where an employee claims other employees similarly did

not meet expectations but were disciplined differently, the legitimate expectations element and

the similarly situated element merge together).  The Court therefore looks to the evidence of similarly situated individuals to determine whether Jordan and Greenlaw can establish a *prima facie* case.  "When uneven discipline is the basis for a claim of discrimination, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor, rather than job description and duties."  *Coleman v. Donahoe*, 667 F.3d 835, 849 (7th Cir. 2012).

The Court first turns to Jordan.  The undisputed evidence shows that a probationer under Jordan's watch committed a rape and Jordan failed to address two out of three of that probationer's prior violations on supervision.  Additionally, Jordan was working under a Last Chance Agreement due to his prior disciplinary and performance issues.  Under the Last Chance Agreement, Jordan agreed that future failure to comply with JPD policies would lead to his termination, and indeed, JPD terminated Jordan following the incident with his probationer.

Jordan points to two potential comparators: Brian Modjeski, his immediate supervisor, and Joseph Wozniak, a white non-officer employee who was also working under a Last Chance Agreement.  Neither comparator suffices.  With regard to Modjeski, the Seventh Circuit has held that absent extraordinary circumstances, a plaintiff's supervisors are not proper comparators in disparate discipline cases.  *See, e.g.*, *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) ("[W]e have previously held that 'ordinarily, it will not be the case that a plaintiff is similarly situated to another employee when the plaintiff is subordinate to that employee,' and [plaintiff] has given us no reason to believe this is an extraordinary case." (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)).  While Jordan argues that JPD supervisors typically receive discipline alongside their supervisees, based on a single incident when JPD suspended both him and his supervisor, significant differences exist between Jordan and

Modjeski.  First, Jordan has not pointed to any evidence that Modjeski was subject to a Last Chance Agreement or that Modjeski had the same disciplinary history as Jordan.  *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) ("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated.").  Second, Jordan has presented no evidence that Modjeski had the same responsibilities as Jordan; although Jordan argues that Modjeski shared the responsibility for monitoring the probationers assigned to Jordan, there is no evidence that Modjeski's duties included writing violation reports or monitoring the probationers so closely that he would render Jordan's job superfluous.  Indeed, the only real similarity between Jordan and Modjeski in terms of *Coleman* factors is that they shared a similar supervisor in Deputy Chief William Pieroth, but no evidence exists that Pieroth had any influence in the disciplinary decisions.  *See Coleman*, 667 F.3d at 847 ("When the same supervisor treats an otherwise equivalent employee better, one can often reasonably infer that an unlawful animus was at play.").  Based on the lack of similarities between Jordan and Modjeski, the Court does not find this to be the extraordinary case where a supervisor, like Modjeski, would be an appropriate comparator.  *Patterson*, 589 F.3d at 366.

Wozniak does not serve as a proper comparator either.  Jordan and Wozniak did not report to the same supervisor and did not engage in similar misconduct—Wozniak was excessively absent, while Jordan failed to monitor a probationer who violated probation and committed a new crime.  The only similarity between the two is that they were both subject to Last Chance Agreements.  The Court is not asking for "laboratory-perfect comparators" as Jordan puts it.  Doc. 126 at 14.  However, the Court does ask for proper comparators, such as those people who engaged in the same conduct, were subject to the same standards, and received different treatment from the same supervisor.  *Coleman*, 667 F.3d at 849.  Jordan has failed to

present evidence of similarly situated comparator, which dooms his claim under *McDonnell Douglas*. *McDonnell Douglas*, 411 U.S. at 803.

Turning to Greenlaw, the evidence shows that Evans charged Greenlaw with over a hundred violations relating to his gas card. After an investigation and rebuttal hearing, Evans terminated Greenlaw for fraudulent use of his card, which constituted theft of services. Greenlaw is unable to articulate even a single potential comparator. He argues that he cannot show a comparator because Evans failed to produce any records related to other gas card misuse during discovery, and that therefore Evans should be precluded "from arguing that Greenlaw failed to come forward with comparators." Doc. 126 at 12 n.5. Beyond the fact that Greenlaw sets forth this argument in a footnote and without any legal justification, Greenlaw has not made any argument that discovery was not complete at the close of discovery, and therefore his discovery objections and request for discovery sanctions in his response to the motion for summary judgment are untimely and improperly presented. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (finding district court did not abuse its discretion in denying plaintiff's motion to rectify perceived inadequacies in discovery that was filed after summary judgment briefing had already begun). Without a comparator, Greenlaw cannot establish a *prima facie* case under the *McDonnell Douglas* framework. *McDonnell Douglas*, 411 U.S. at 803.

### B.     Cumulative Assessment of the Evidence

"A district court must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question of whether 'a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse employment action.]'" *Zegarra v. John Crane, Inc.*, 218 F.

Supp. 3d 655, 665–66 (N.D. Ill. 2016) (alterations in original) (quoting *Ortiz*, 834 F.3d at 765). Instead the Court must also weigh whether Jordan and Greenlaw's evidence would cause "a reasonable factfinder to determine" that their race caused their termination. *Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 686–87, 690–91 (N.D. Ill. 2017) (after addressing *McDonnell Douglas* test, cumulatively assessing "all the evidence" to determine if the plaintiff could prove a case of age and disability discrimination at trial).

Both Jordan and Greenlaw rely heavily on the Union's compiled statistics of racial discrimination in JPD's disciplinary conduct to argue that JPD's stated reasons for terminating their employment were pretextual. However, general statistical evidence is an "improper vehicle" to prove disparate treatment. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997) ("We have held statistics are improper vehicles to prove discrimination in disparate treatment (as opposed to disparate impact) cases. . . . Even if we were to consider [Plaintiff]'s statistical evidence, we would find that it fails to demonstrate that racial prejudice was at work in this case."); *see also Matthews v. Waukesha County*, 759 F.3d 821, 829 (7th Cir. 2014) ("[E]vidence of a pattern or practice can only be collateral to evidence of specific discrimination against the plaintiff herself"). While the Court considers the evidence as a whole, because Plaintiffs are not proceeding on their class claims, and the individual Plaintiffs' claims do not sound in disparate impact, the central question remains whether each individual plaintiff suffered disparate treatment. Therefore, in analyzing Jordan and Greenlaw's claims that their failure to meet JPD's expectations, by failing to monitor probationers and by misusing a gas card, were pretext, the Court considers whether "racial prejudice was at work in this case," not whether JPD has discriminated against African Americans in the past. *Plair*, 105 F.3d at 349.

1.      **Jordan**

Aside from the general statistics, the only evidence of pretext that Jordan offers is the two potential comparators, Modjeski and Wozniak, whom the Court has already found were not similarly situated.[3]  The Court therefore concludes that Jordan has not presented sufficient evidence of pretext for a reasonable juror to find that JPD did not honestly believe that it terminated Jordan because a probationer committed a new crime while Jordan failed to adequately supervise him.  *Seymour-Reed v. Forest Pres. Dist. of DuPage County*, 752 F. App'x 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness.").

2.      **Greenlaw**

Greenlaw argues that JPD departed from its standard practices, constituting evidence of pretext, because he had no prior disciplinary history, JPD did not evaluate his termination under a "just cause" standard, JPD had mixed in paperwork for an unrelated car and gas card in his investigation, and JPD misrepresented the grievance record.  *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) ("[A]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext.").

First, the Court notes that the record does not support that JPD did not consider Greenlaw's lack of prior discipline, or that it did not evaluate his termination under a "just cause" standard.  The record only supports that Greenlaw did not have a prior record of discipline, and even so, JPD terminated him anyway.  Second, although Greenlaw argues that

---

[3] Jordan also seems to make an argument that JPD discriminated against him by placing him on a Last Chance Agreement in the first place, but he did not allege that as a basis for discrimination in his complaint, and cannot use the response to a motion for summary judgment as a vehicle to amend his complaint.  *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (citation omitted)).

JPD simply ignored him when he brought up the paperwork regarding the wrong car, there is no evidence that JPD relied solely on this wrong paperwork, or that JPD actually ignored him. Without support in the record that JPD ignored the "just cause" factors or the warnings of the mixed in paperwork, these arguments amount to nothing more than a request that the Court "sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices," which the Seventh Circuit has repeatedly held is not a proper function of the Court. *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (citation omitted). Furthermore, speculative arguments about what the employer considered, and the weight it gave to each factor it considered, do not suffice to show that the employer actually departed from its standard procedures. *See Jajeh v. Cty. of Cook*, 678 F.3d 560, 572–73 (7th Cir. 2012) (finding plaintiff's speculative arguments about what went into employer's decision not to promote were not sufficient evidence to show employer failed to follow its internal employment procedures). Indeed, JPD held an investigatory hearing where Greenlaw had the opportunity to explain the discrepancies in his gas use, and a rebuttal hearing a month later where he had another opportunity to do the same. The Union represented Greenlaw at both hearings, and at every step in the investigation and grievance process. These are all indications that JPD followed its standard procedure, not that JPD departed from it. The Court therefore finds that Greenlaw has not shown sufficient evidence for a reasonable juror to conclude that JPD has departed from its standard procedure.

Finally, the Court notes that Greenlaw's argument that JPD misrepresented the grievance record is contradicted by his own testimony. Though Smith, his Union representative, declares that he "personally raised racial discrimination at every step of Greenlaw's grievance," Doc. 127-4 ¶ 17, Greenlaw's testimony tells a different story: "Q: Did you allege in the grievance that

you were terminated because of your race? A: No. Q: So it's fair to say that in this grievance you were attacking the sufficiency of the evidence that led to the decision? A: Yes." Doc. 117-4 at 119:23–120:5. Therefore, there is not enough evidence to show that JPD actually misrepresented the grievance record. Taken together, the evidence is insufficient to show that JPD did not honestly believe its reason for terminating Greenlaw, that he repeatedly misused his gas card. *Seymour-Reed*, 752 F. App'x at 335.

Considering the evidence as a whole, the Court finds that neither Jordan nor Greenlaw can establish a *prima facie* case under the *McDonnell Douglas* framework, nor can they show evidence of pretext, and therefore no reasonable juror could conclude that Jordan's or Greenlaw's race caused either termination. *Ortiz*, 834 F.3d at 765.

## III.    Motion for Summary Judgment on Nelson and Chapman's Claims

Evans next moves for summary judgment on Nelson and Chapman's discrimination and retaliation claims. Nelson and Chapman claim JPD discriminated against them for disparate pay at a training conference and with regard to the supervisor's exam. They claim JPD retaliated against them by transferring them out of the Jumpstart program after they filed their charges of discrimination and this lawsuit. The Court addresses each in turn.

### A.    Discrimination Claims

The Court first addresses Nelson and Chapman's "claim that, because of their race, they were denied time-and-a-half payment for attending a training conference." Doc. 126 at 1 n.1. Evans is incorrect in his assertion that "[t]here is no indication in the [second amended complaint] that Plaintiffs sought redress for time-and-a-half payment; in fact, it goes unmentioned in any of their enumerated counts, and is not mentioned in any request for relief." Doc. 132 at 11. The Court finds that ¶ 82(g) of the second amended complaint covers this claim:

"[wherefore], Plaintiffs pray this Court to: [g]rant damages to Nelson and Chapman and other African American juvenile probation officers who were denied compensation for out-of-state job training." Doc. 55 ¶ 82(g). Although the second amended complaint is not a picture of clarity, it lays out the factual allegation related to this claim: "[b]oth plaintiffs Nelson and Chapman filed grievances with their union claiming they were denied compensation for time spent doing job-related training out-of-state, when white probation officers did receive compensation for similar out-of-state training." *Id.* ¶ 68. Furthermore, Evans asked Chapman about this particular allegation in his deposition. *See* Doc. 117-15 at 42. Because Evans had notice of and did not make any specific argument for summary judgment on this claim, it remains an active claim.

Nelson and Chapman also claim that the supervisor's exam was racially discriminatory, and that JPD retaliated against them for filing charges of discrimination with the EEOC and joining this lawsuit. Evans argues that Nelson and Chapman's claims regarding the supervisor's exam are time-barred, and, alternatively, that it was not racially discriminatory. Evans also argues that Nelson and Chapman cannot show a causal connection between their race and their transfer out of the Jumpstart program. The Court addresses the supervisor's exam question first.

Discrete discriminatory acts are not actionable under Title VII if they occurred more than 180 or 300 day before plaintiff filed charge with EEOC. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). It is well established that a failure to promote is a discrete act that is subject to Title VII's statute of limitations. *Id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. . . . Morgan can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."). Nelson and Chapman took the supervisor's exam in 2007 or 2008 and again in 2012. They did not pass either time, and Evans did not promote them. Nelson and

Chapman learned that they had not been promoted in 2012 and did not file charges of discrimination based on this decision until 2014, over 300 days from the date of the alleged discrimination. They attempt to keep this claim alive by arguing that Evans' refusal to promote them was a continuing act of discrimination. However, their argument that their claim is timely because a 2015 promotion decision was made based on the 2012 promotion list offers new allegations that they did not raise in the second amended complaint, and the Court therefore disregards this argument. *Anderson*, 699 F.3d at 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (citation omitted)). Even if Nelson and Chapman had properly alleged these arguments, they cannot rely on a continuing violation theory, even if JPD used the same list each time because failure to promote is not a continuing violation as a matter of law. *Id.* Therefore, the Court finds that Nelson and Chapman's claims regarding the supervisor's exam are untimely and does not address the substance of these claims.

### B. Jumpstart Program

With regard to the Jumpstart program, Nelson and Chapman complain that, in retaliation for their filing of EEOC charges and joining this lawsuit, Evans removed them from their positions, transferred them, and did not provide a bidding process for the remaining Jumpstart program jobs. Title VII prohibits retaliation against employees who engage in statutorily protected activity. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). To prevail on their claims, Nelson and Chapman must establish that (1) they engaged in a statutorily protected activity, (2) they suffered a materially adverse action, and (3) a causal connection exists between the two. *Id.* Nelson and Chapman's charges of discrimination and joining of this lawsuit are statutorily protected activity. 42 U.S.C. § 2000e-3. Evans challenges the remaining

two elements: that Nelson and Chapman did not suffer a materially adverse action and that there was not a causal connection to their statutorily protected activity. The parties treat the reorganization, transfer, and (lack of) bidding process as a single event for the purposes of determining a materially adverse action. The Court therefore analyzes everything together as one event, the "transfer."

Evans first argues that Nelson and Chapman's transfer does not amount to a materially adverse action. Evans improperly argues for a higher standard, appropriate for discrimination claims, that "[t]o sustain a federal employment discrimination suit, a plaintiff must show something more than the ordinary difficulties associated with a job transfer." Doc. 118 at 17 (quoting *O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004)). However, for retaliation claims, an action is materially adverse if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Nelson and Chapman have testified that their pay remained the same but their hours increased, effectively lowering their rate of pay, and that their career growth opportunities in the area of alternative education diminished resulting from their transfer to an entry level field position. This suffices to create at least a question of fact as to whether the transfer amounted to a materially adverse action. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 559 (7th Cir. 2014) (finding genuine issue of material fact existed as to whether employer retaliated against employee when it effectively demoted her following reorganization of her department because she complained of sexual harassment by a supervisor); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 753 (7th Cir. 2002) ("We do not doubt that, in certain circumstances, an employer's deliberate denial of career opportunities could constitute an adverse employment action."); *Crady v. Liberty Nat'l Bank & Tr. Co.*, 993 F.2d 132, 135–36

(7th Cir. 1993) (adverse employment actions include "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.").

Evans next argues that Nelson and Chapman cannot show retaliation because they never submitted bids for the desirable education and advocacy positions remaining in Jumpstart. Doc. 132 at 13–14. However, Evans did not implement the normal bid system, giving Tatanisha Jackson a newly created position without posting it for bids, and therefore Nelson and Chapman never had an opportunity to submit bids. This distinguishes their case from those cases that Evans cites: in *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003), the Seventh Circuit held that Grayson had to show that he actually applied for and was rejected for a promotion in order to establish a failure to promote case, and in *Han v. Whole Foods Market Group, Inc.*, 44 F. Supp. 3d 769, 788 (N.D. Ill. 2014), the court held that Han could not prevail on his claim that he was not transferred or promoted because he failed to properly apply for a promotion or transfer. In neither of these cases did the employer depart from their normal application process, which is what JPD did here.

Finally, Evans argues that Nelson and Chapman cannot show a causal link between their protected activity and the materially adverse action. "[R]etaliation claims must be proved according to traditional principles of but-for causation," meaning "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). The Seventh Circuit has simplified this question recently to the straightforward inquiry: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [adverse action]?" *Lord*, 839 F.3d at 563

(citing *Ortiz*, 834 F.3d at 765).  Though "the dispositive question remains whether a reasonable jury could find a but-for causal link between the protected activities and adverse actions at issue," because Evans "has presented non-retaliatory reasons for [his] conduct, the true question is whether the proffered reasons were pretext for retaliation."  *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017).  Nelson and Chapman can avoid summary judgment if there is a genuine issue of material fact on the question of pretext.  *Lord*, 839 F.3d at 564 ("Of course, an employer's proffered justifications are always susceptible to attack, and Lord can avoid summary judgment if a material factual dispute exists on the question of pretext.").  "[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness."  *Seymour-Reed*, 752 F. App'x at 335.

In this case, JPD departed from the required seniority-based bidding procedure for filling new jobs.  Such a departure from the employer's typical policies and procedures can constitute evidence of pretext and help Nelson and Chapman show a causal connection in a retaliation claim.  *Rudin*, 420 F.3d at 727 ("[A]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext.").  Evans did not follow the standard bidding procedure for the new or newly vacant positions created during the reorganization of the Jumpstart program, which constitutes evidence of pretext.  Adding to the evidence of pretext is the fact that Evans decided to reorganize Jumpstart, eliminating Nelson and Chapman's positions, less than two months after receiving the complaint in this case.  *Coleman*, 667 F.3d at 860 ("When temporal proximity is one among several tiles in an evidentiary mosaic depicting retaliatory motive, however, suspicious timing can sometimes raise an inference of a causal connection." (internal punctuation omitted)).  A final piece of pretextual evidence is Das' unsolicited denial of retaliation.  Some courts have found that juries are allowed to interpret

specific, unsolicited denials of retaliatory motive as evidence that there *was* a retaliatory motive. *See, e.g.*, *Munshi v. Alliant Techsystems, Inc.*, No. CIV. 99–516PAMJGL, 2001 WL 1636494 at *3 (D. Minn. June 26, 2001) ("To paraphrase Shakespeare, perhaps Meyers 'doth protest too much.' A reasonable jury could view Meyers' [denials of discriminatory intent] as indicating that he may have had a discriminatory motive when he decided to terminate Munshi."); *United States v. Allied Stevedoring Corp.*, 241 F.2d 925, 933 (2d Cir. 1957) ("Again and again in all sorts of situations we become satisfied, even without earlier contradiction, not only that a denial is false, but that the truth is the opposite: 'The lady doth protest too much, methinks.'"). Considered collectively, the Court finds "that the evidence, taken in the light most favorable to [Nelson and Chapman], creates a triable issue of pretext." *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005) (finding suspicious timing coupled with employer's sudden dissatisfaction with employee's performance and other circumstantial evidence may constitute evidence of causation).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Evans' motion for summary judgment [115]. The Court dismisses Plaintiffs' class claims. The Court enters judgment against Jordan and Greenlaw on their Title VII and ICRA discrimination claims. The Court enters judgment against Nelson and Chapman on their untimely claims regarding the supervisor's exam. The Court denies Evan's motion for summary judgment on Nelson's and Chapman's claims relating to their transfers from the Jumpstart program.

Dated: September 9, 2019

_____
SARA L. ELLIS
United States District Judge